Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5120 | **DATE** | 1/7/2005 |
| **CASE TITLE** | Eddie Harris vs. Sheriff Michael Sheahan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, defendants' motion for summary judgment [30-1] is granted. Enter Memorandum Opinion and Order. Terminate case. /s/ Geraldine Soat Brown

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 10 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 39 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/7/2005 | |
| GR | courtroom deputy's initials | 2005 JAN -7 PM [illegible] U.S. [illegible] | date mailed notice GR | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE HARRIS #2002-0011027 ) | |
| Plaintiff, ) | Cause No. 03 C 5120 |
| ) | |
| v. ) | Magistrate Judge Geraldine Soat |
| ) | Brown |
| SHERIFF MICHAEL SHEAHAN, ) | |
| SUPT. TROKA and SUPT. HOLMES, ) | |
| Defendants. ) | |

DOCKETED
JAN 1 0 2005

## MEMORANDUM OPINION AND ORDER

Plaintiff Eddie Harris ("Harris") brought this *pro se* action against Defendants Sheriff of Cook County Michael Sheahan ("Sheahan"), former Cook County Department of Corrections ("CCDOC") Superintendent Henry Troka ("Troka") and CCDOC Superintendent Michael Holmes ("Holmes") (collectively, "Defendants") under 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment because of certain conditions of his confinement. Specifically, Harris claims that Defendants violated 42 U.S.C. § 1983 by suspending recreation from August 2002 until August 2003 for detainees in the protective custody wing, and by maintaining poor ventilation. (Am. Compl. ¶¶ 1-10, 11-13.) [Dkt 6.]¹ Defendants have moved for summary judgment on both counts in the amended complaint. [Dkt 30.] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 21, 22, 24.] For the reasons set forth below, Defendants' motion for summary judgment is granted.

---

¹ Harris did not assign numbers to the paragraphs containing allegations in his amended complaint, but Defendants did in their answer to the amended complaint. (Answer.) [Dkt 14.] For the sake of simplicity, this opinion will cite to the numbered paragraphs indicated in Defendants' answer to the complaint.

39

## JURISDICTION

Federal jurisdiction exists under 28 U.S.C. § 1331 (federal question jurisdiction). Federal question jurisdiction is proper in this case because both counts of the amended complaint invoke 42 U.S.C. § 1983.

## BACKGROUND

### A. Procedural Background

Defendants submitted a motion for summary judgment on both counts of Harris' amended complaint on April 26, 2004. That same day, Defendants also served a notice to Harris under Local Rule 56.2, explaining the procedure required for responding to a motion for summary judgment and warning of the consequences for failing to comply with the rule. (L.R. 56.2 Notice.) [Dkt 29.][2] At a status hearing at which Harris was present by telephone, a briefing schedule had been set on Defendants' motion, requiring Harris to respond by May 26, 2004. (Order, Mar. 31, 2004.) [Dkt 28.] However, Harris failed to file any response by that date. Accordingly, on June 7, 2004, this court issued an order directing Harris to file a response to Defendants' motion by June 25, 2004, and warning Harris that any failure to file a response would result in dismissal of his case for want of prosecution. (Order, June 7, 2004.) [Dkt 33.]

On June 30, 2004, Harris filed a document that the court construes as intended to be his response to Defendants' motion (hereinafter referred to as Plaintiff's Response). The Response is entitled "Exhibits" on the docket, although it is actually an untitled document that contains a

---

[2] The Local Rule 56.2 notice advised Harris what he needed to do to contest Defendants' motion for summary judgment, and, specifically, what he needed to do to dispute Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a). (L.R. 56.2 Notice.)

subheading called "Exercise," not "Exhibits." (Pl.'s Resp.) [Dkt 34.] In any event, that Response fails to comply with Local Rule 56.1(b)(3). (*Id.*) Specifically, Harris does not respond to the numbered material facts in Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a), nor refer to parts in the record which may have supported his disagreements. Nor does Harris submit his own additional facts and supporting materials in his Response. Because he is *pro se*, the court will construe Harris' Response liberally. However, even doing so, the court notes that the statements in Harris' Response are generally non-responsive, argumentative rather than factual, and, furthermore, without evidentiary support. Statements without evidentiary support are not to be considered. *See* L.R. 56.1(b)(3)(B) (stating that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party"); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).[3] For those reasons, Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a) and Supporting Exhibits is deemed admitted in its entirety, pursuant to Local Rule 56.1(b)(3)(B).

Deeming the statements in Defendants' Statement of Material Facts to be admitted does not, however, mean that summary judgment will automatically be granted in favor of Defendants.

---

[3] *See also Laramore v. City of Chicago*, No. 02 C 4220, 2004 WL 2033005 at *2 (N.D. Ill. Sept. 10, 2004) (Filip, J.) (deeming the defendant's Local Rule Statement admitted to the extent the statements contained therein were properly supported by affidavits, record evidence or other supporting material, where *pro se* plaintiff failed to comply with Local Rule 56.1) (collecting cases); *Nelson v. Stover*, No. 01 C 8371, 2004 WL 726133 at *1 (N.D. Ill. March 31, 2004) (Denlow, M.J.) (stating that "[w]hen considering a motion for summary judgment, the brief and complaints of a *pro se* prisoner who is not skilled in legal analysis must be liberally construed," but liberal construction "does not obviate the need for Plaintiff to comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1") (citations omitted); *Greer v. McCurry*, No. 02 C 4326, 2003 WL 21826549 at *1-2 (N.D. Ill. Aug. 5, 2003) (Zagel, J.) (holding that *pro se* prisoner's failure to properly respond to the defendants' statement of material facts warranted disregard of any contrary assertions made by the plaintiff in his briefs).

*Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). To warrant summary judgment, the evidence submitted must be admissible at trial under the Federal Rules of Evidence, *Bombard v. Fort Wayne Newsp., Inc.*, 92 F.3d 560, 562 (7th Cir. 1996), and the court must make the finding that given the undisputed facts, summary judgment is proper as a matter of law. *Wienco, Inc.*, 965 F.2d at 568.

### B. Factual Background[4]

#### 1. The Parties

Harris is a pretrial detainee who is being held at the CCDOC pending trial on first degree murder charges. (Defs.' LR Stmt. Parties ¶ 1; Defs.' LR Stmt. ¶ 2; Defs.' LR Ex. 1, Harris Dep. at 15.) Harris was booked on February 8, 2002 and assigned to the protective custody wing of Division XI of the CCDOC, where he has remained ever since, due to "all the media attention that his case has received." (Defs.' LR Stmt. Parties ¶ 1; Defs.' LR Stmt. ¶¶ 1, 3; Harris Dep. at 15, 18-19.)[5]

Defendant Sheahan is, and has been at all relevant times, the Sheriff of Cook County. (Defs.' LR Stmt. Parties ¶ 2.) Defendant Troka was the Superintendent of Division XI until his retirement on November 15, 2002. (*Id.* ¶ 3.) Defendant Holmes assumed Troka's position after Troka's retirement, and is the current Superintendent of Division XI. (*Id.* ¶ 4; Defs.' LR Ex. 4, Affidavit of

---

[4] The following facts are taken from Defendants' Statement of Material Facts Pursuant to Local Rule 56.1(a) and Supporting Exhibits, cited herein as: "Defs.' LR Stmt. ¶ ___" and "Defs.' LR Ex. ___." [Dkt 31.]

[5] Duane Roach, another detainee housed within Harris' division on charges for the same crime, received a threatening letter at the jail stating that gangs within the jail were after him and Harris. (Defs.' LR Stmt. ¶ 4; Harris Dep. at 23.) Jail officials and Harris' attorney agreed that Harris should remain in protective custody for his own protection. (Defs.' LR Stmt. ¶ 5; Harris Dep. at 25.)

Michael Holmes ¶¶ 1, 2.)

## 2. The Recreation Regime Prior to August 27, 2002

During the entire time that Harris has been confined at the CCDOC, detainees in the protective custody wing have followed a "23 and 1" recreation regime, which means that they are locked in their cells for 23 hours a day and may leave their cells for one hour a day. (Defs.' LR Stmt. ¶ 18; Harris Dep. at 38; Holmes Aff. ¶ 8.) Under the recreation regime that was in place prior to August 27, 2002, all 48 members of the protective custody wing were given their one hour of free time together. (Harris Dep. at 34-35, 49.) The detainees had access to an indoor recreation room and an outdoor recreation area. (*Id.* at 34-35.) The indoor recreation room has a basketball hoop, pool table and weights. (*Id.* at 34.) The outdoor recreation area has a basketball hoop. (*Id.*) The detainees could not split up; all 48 of them had to use the indoor recreation room or the outdoor area together, with the decision being based on the area that the majority of detainees desired on that particular day. (*Id.* at 35-36, 49, 79.)

There is also a room called the "day room," which detainees are permitted to use during their one hour of free time each day. (Defs.' LR Stmt. ¶ 6; Holmes Aff. ¶ 8.) The day room has six showers, four bathroom stalls, 12 tables, three phones and a television. (Harris Dep. at 36-37.) The day room is larger than the indoor recreation room. (*Id.* at 84-85.) In the day room, detainees can use the phone, take a shower, and watch television. (Defs.' LR Stmt. ¶ 7.) Detainees can also exercise in the day room, including doing calisthenics such as jumping jacks and push-ups, and

jogging around. (*Id.* ¶ 7; Harris Dep. at 39-40, 52, 54.)[6]

### 3. The Stabbing Incident On August 27, 2002

Fights or scuffles arose frequently during the recreation hour. (Harris Dep. at 79-80.) Harris testified that the recreation hour was "not exactly the safest hour," and explained that the fights or scuffles occurred so frequently because there were 48 detainees having recreation at one time. (*Id.* at 49, 79-80.)[7]

On August 27, 2002, while the protective custody detainees were using the outdoor recreation area, a violent incident occurred. (Defs.' LR Stmt. ¶ 8.) One of the detainees stabbed another detainee with a shank that almost killed him. (*Id.* ¶ 9.) Harris was not injured during the melee and had no part in the attack. (Harris Dep. at 58, 59.) Immediately after the stabbing incident, a "shakedown" was performed by the guards to search for any shanks or weapons that may have been hidden by the prisoners. (*Id.* at 55, 57, 60; Defs.' LR Ex. 3, Affidavit of Henry Troka ¶ 6.) Harris claims that, as a result of the shakedown, many of his personal items, such as magazines, books and medication, were taken and not returned. (Harris Dep. at 55-56; Defs.' LR Ex. 2, Grievance & Response at 1.)

---

[6] It is unclear from the record how often the detainees were permitted (or required) to use the day room rather than one of the recreation areas during their one hour of free time each day.

[7] Harris testified during his deposition that there were fights every day or every other day. (Harris Dep. at 49.) Later during his deposition, though, Harris testified that there were fights approximately one to three times each week. (*Id.* at 79-80.)

### 4. The Recreation Regime After August 27, 2002

On August 29, 2002, Troka, the Superintendent at that time, was advised that, per CCDOC Executive Director Ernesto Velasco, detainees in the protective custody wing were not to have recreation while an investigation of the stabbing incident was being conducted. (Defs.' LR Stmt. ¶ 15; Troka Aff. ¶ 5.) Troka did not have any part in ordering the suspension of recreation except to ensure that Velasco's orders were enforced. (Defs.' LR Stmt. ¶ 16; Troka Aff. ¶ 9.)[8]

During the time that recreation was suspended, Harris and the other detainees in protective custody were still allowed to use the day room during their one hour of free time each day, where they could exercise and do calisthenics, among other things. (Defs.' LR Stmt. ¶¶ 6-7; Harris Dep. at 36.) Harris testified that he would jog in the day room on occasion because, approximately two months prior to the stabbing incident, he had started receiving treatment for back problems and was instructed by his doctor to jog in order to help his back heal. (Harris Dep. at 43, 48-49, 52, 54.)

In August 2003, approximately one year after the stabbing incident, the new Superintendent, Michael Holmes, instructed his chief to began drafting new recreation schedules for the protective custody detainees. (Defs.' LR Stmt. ¶ 19; Holmes Aff. ¶ 10.) Recreation time was subsequently reinstated for Harris and all of the other detainees in protective custody in August 2003. (Defs.' LR Stmt. ¶ 14.) Under the new recreation regime, only eight detainees (four cells) are permitted in the recreation areas at a time. (Harris Dep. at 35.)[9] The eight detainees can be divided into groups, so

---

[8] Harris testified in his deposition that, based on statements made by Troka, it was his understanding that Troka and Chief Bosley made the decision to suspend recreation pending an investigation of the stabbing incident. (Harris Dep. at 73-74, 77-78.)

[9] From the record, it is not clear whether Velasco had any involvement in the decision to reinstate recreation. *See* Defs.' LR Stmt. ¶ 19; Holmes Aff. ¶ 10.

that some may use the indoor recreation room while others are using the outdoor recreation area. (*Id.*) Harris testified that the new recreation regime is safer than it was prior to the stabbing incident, because a detainee has a better chance of defending himself against four people than 48 people. (*Id.* at 50.) Harris further testified that he thought the changes implemented in the new recreation regime were "a good idea." (*Id.* at 50.)

### 5. Grievances Filed By Harris

On August 30, 2002, Harris filed a grievance that referred to the August 27, 2002 stabbing incident (the "August 30, 2002 grievance"). (Defs.' LR Stmt. ¶ 10; Grievance & Response at 1-2.) In that grievance, Harris complained that:

> On August 27, 2002 we had an occurrence where our deck was shaken down due to a conflict at wreck [sic]. We had no part of what happened at wreck [sic]. Our cell as well as others lost many personal items. The items in breif [sic] they removed from my cell is: 10 magazines, 5 paperback books, 3 pieces of mail and prescribed medication. A list of magazines and books are included in this grievance. . . .

(Grievance & Response at 1; Defs.' LR Stmt. ¶ 20; Holmes Aff. ¶¶ 6-7.) At the conclusion of his grievance, Harris sought compensation for the personal items that were allegedly taken during the shakedown. (Grievance & Response at 1; Troka Aff. ¶ 6.) The grievance was responded to by Troka and returned to Harris on September 9, 2002. (Defs.' LR Stmt. ¶ 23; Troka Aff. ¶ 7; Defs.' LR Ex. 5, Affidavit of John Mueller ¶¶ 6, 8; Grievance & Response at 3.) In his response, Troka stated that he was "unable to verify [Harris'] allegation resulting in an inconclusive end to [his] investigation." (Grievance & Response at 3; Troka Aff. ¶ 7; Harris Dep. at 61.) Harris never appealed that decision. (Defs.' LR Stmt. ¶ 24; Harris Dep. at 61-62.)

Defendants assert that Harris never complained about the suspension of recreation in his

August 30, 2002 grievance, or in any other grievance. (Defs.' LR Stmt. ¶ 20; Grievance & Response at 1-2; Troka Aff. ¶¶ 6, 8; Holmes Aff. ¶¶ 6-7; Mueller Aff. ¶¶ 5-6.)[10] Harris did not dispute that there was no grievance by him on file dealing with the suspension of recreation, or that the August 30, 2002 grievance was the only properly filed grievance relating to the stabbing incident. (Defs.' LR Stmt. ¶¶ 10-11, 20; Harris Dep. at 62-64.)

At his deposition, Harris testified that there is a grievance box in the day room but he does not put his grievances in the box. (Harris Dep. at 64.) He stated that instead, he gives his grievances to an officer or a social worker employed with the CCDOC. (*Id.*) Harris testified that, although there is a "pink portion" on the grievance form that could serve as a copy of the grievance filed, detainees do not keep copies of the grievance forms for themselves; instead, they get copies of their grievances from the CCDOC after they have been filed. (*Id.* at 65.)

### 6. Harris' Amended Complaint

On August 19, 2003, Harris filed an amended complaint in this action. (Defs.' LR Stmt. ¶ 25; Am. Compl.) In his amended complaint, Harris alleges generally that the suspension of recreation was a violation of his rights under the Eighth Amendment. (Am. Compl. ¶¶ 1, 4, 5.) Harris also claims that he filed several grievances on this issue but never received any responses to those grievances. (*Id.* ¶ 7.)

In addition, Harris claims that his constitutional rights were violated by the CCDOC's failure

---

[10] John Mueller is the Assistant Administrator at the Program Services Department of the CCDOC, whose duties include acting as the "keeper" of all detainee grievances filed since 1999. (Mueller Aff. ¶¶ 1, 2, 4.) According to his Affidavit, Mueller performed a search of any and all grievances submitted by Harris, and was able to locate only the August 30, 2002 grievance. (*Id.* ¶¶ 5-6.)

to maintain adequate ventilation in the protective custody wing. (*Id.* ¶¶ 11-13.) Specifically, Harris claims that the ventilation inside his cell is poor and that smoke enters his cell through the vents when other individuals smoke, or when detainees use milk cartons as a means to start a fire in order to cook food inside their cells. (*Id.* ¶ 11; Harris Dep. at 81-82.) Harris also complains of extreme heat, stating that his unit was "the only deck without air conditioning, and the ['chuckholes'] on the doors were locked only in [his] deck as well." (Am. Compl. ¶ 12.) Harris testified that the chuckholes were eventually welded shut. (Harris Dep. at 31-32.)[11]

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial

---

[11] Defendants' Statement of Material Facts in support of their motion for summary judgment did not address the ventilation and heating concerns raised by Harris in his amended complaint. Thus, for purposes of Defendants' motion for summary judgment, the court relies on the allegations in the amended complaint, as well as any evidence in the record pertaining to this issue.

burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Id. See also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (non-moving party is required to present evidence of "evidentiary quality," *i.e.*, admissible documents or attested testimony, such as that found in depositions or in affidavits, demonstrating the existence of a genuine issue of material fact). "[N]either 'the mere existence of some alleged factual dispute between the parties' ... nor the existence of 'some metaphysical doubt as to the material facts,' is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (quoting *Anderson*, 477 U.S. at 247 and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Harris claims that his constitutional rights were violated when the CCDOC suspended recreation for approximately one year and when he was subjected to poor ventilation and extreme heat while being detained at the CCDOC. Defendants argue that Harris is barred from bringing these claims, and summary judgment should be granted on these claims, because Harris failed to exhaust the administrative remedies made available to him, as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Defs.' Mem. at 10-11.) Harris' Response does not address that argument in any way.

-11-

Specifically, Defendants argue that Harris "did not file a grievance that addressed the issues he has raised in this lawsuit," but, instead, only filed a grievance requesting compensation for personal items that were taken during the shakedown following the stabbing incident. (*Id.*) Defendants assert that there is no record of any other grievance being filed, because John Mueller, the Assistant Administrator at the Program Services Department of the CCDOC and the "keeper" of all grievances filed since 1999, performed a search of all such grievances and was only able to locate the August 30, 2002 grievance referred to above. (*Id.*; Mueller Aff. ¶¶ 2, 4-6.)

Under the PLRA, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[12] The Seventh Circuit has stated that, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). However, "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable.'" *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted).

In this case, the undisputed evidence demonstrates that Harris did not exhaust the administrative remedies made available to him before he filed his amended complaint. Defendants submitted Mueller's affidavit in which Mueller states that he was responsible for keeping all detainee grievances filed since 1999 and that, after performing a search for any and all grievances filed by Harris during the relevant time period, Mueller was only able to locate the August 30, 2002

---

[12] The term "prisoner" includes any person detained in a facility who is accused of violating a criminal law. 42 U.S.C. § 1997e(h); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

-12-

grievance. (Mueller Aff. ¶¶ 2-6.) Although the August 30, 2002 grievance related to the stabbing incident, it did not address the suspension of recreation in any way; it only addressed the confiscation of Harris' personal belongings during the shakedown. (Grievance & Response at 1.)[13] That grievance does demonstrate that Harris was able to obtain grievance forms and knew how to use the grievance process.

Although Harris' amended complaint alleges that he "along with other detainees" filed several grievances regarding the suspension of recreation (Am. Compl. ¶ 7), he never made any such grievances part of the record. Harris testified at his deposition that he had filed "several" grievances regarding the suspension of recreation and that he was told by a social worker at the CCDOC that they had gotten lost. (Harris Dep. at 62-63, 66, 68.) However, he never disputed the statements that the August 30, 2002 grievance was the only properly filed grievance relating to the stabbing incident, and that there was no record of his having filed any grievance addressing the suspension of recreation. (Defs.' LR Stmt. ¶¶ 10-11, 20.) Harris' failure to dispute those facts is significant, particularly in light of his testimony that he did not actually use the grievance box that was available in the day room for filing grievances and instead submitted his grievances to an officer or a social worker employed with the CCDOC. (Harris Dep. at 64.)

Harris admits that he did not file any grievances regarding the alleged poor ventilation, excessive heat, closing of the chuckholes, burning of the milk cartons, or smoke. (Defs.' LR Stmt. ¶¶ 12-13; Troka Aff. ¶ 8; Harris Dep. at 69, 82-83.) As such, there is no issue of material fact as to

---

[13] Moreover, even if the August 30, 2002 grievance had addressed the suspension of recreation (which it did not), that grievance was denied and Harris never appealed that denial. (Troka Aff. ¶ 7.) *See Pozo*, 286 F.3d at 1025 (stating that a prisoner must file complaints *and appeals* in the place and at the time the prison's administrative rules require in order to exhaust remedies).

whether Harris exhausted his administrative remedies before he filed his amended complaint alleging violations under 42 U.S.C. § 1983. Thus, summary judgment is granted on both counts of the amended complaint.

Because the court has determined that summary judgment is appropriate on both counts, Defendants' additional arguments as to why summary judgment should be granted (*i.e.*, that the suspension of recreation had a legitimate penological purpose, that the alleged ventilation and heat problems do not amount to constitutional violations as a matter of law, that there is no genuine issue of material fact with respect to the defendants in their official capacities and there are no allegations directed towards the defendants in their individual capacities, and that Harris' request for injunctive relief and for recreation to resume is moot) need not be addressed. Similarly, Harris' arguments in response to the motion for summary judgment (*e.g.*, that "the right to exercise provides the psychological benefit of allowing inmates to be in each other's presence" and "the right to adequate shelter is a basic human need") need not be reached, either. (Pl.'s Resp. at 2.)

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

January 7, 2005

-14-